

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00148-CR
_____

PEYTON WILSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2019-418,334; Honorable William R. Eichman II, Presiding

February 25, 2021

MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, Peyton Wilson, appeals from his conviction by jury of the lesser-included

offense of aggravated assault with a deadly weapon[1] and the resulting court-imposed

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2020). An offense under this section is a felony of the second degree.

sentence of fifteen years of imprisonment.[2]  Appellant challenges his conviction through four issues.  First, Appellant contends the trial court erroneously failed to instruct the jury on the law of self-defense.  Next, he contends the evidence is insufficient to support the verdict because the jury acquitted him of the only permissible theory of criminal conduct.  By his third issue, Appellant contends he stands convicted of conduct protected by the Second Amendment to the United States Constitution and Article I, Section 23 of the Texas Constitution; and, finally, Appellant posits he was egregiously harmed by the inclusion of an inappropriate lesser-included offense.  Having considered each issue, we will affirm.

### BACKGROUND

This case arises from events that occurred when twelve members of the Lubbock Police Department SWAT Team forcibly entered Appellant's home to execute a high-risk, no-knock narcotics search warrant.  Prior to entry, the officers were briefed that Appellant was dealing in chemically dangerous narcotics and that he "had access to at least a pistol in his bedroom."  The SWAT team members entered the home around the noon hour.  At the time, they were wearing clothing with "POLICE" printed on them as well as gas masks[3] and voice amplifiers.  Each member of the SWAT team announced "police search warrant" loudly and repeatedly on entry.  The SWAT team smashed two windows as a

---

[2] A second degree offense is punishable by imprisonment for any term of not more than twenty years or less than two years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.33 (West 2020).

[3] One of the SWAT team officers testified the officers wore gas masks because they had received information that Appellant was under suspicion of possessing and dealing a dangerous narcotic.

2

distraction[4] and broke the two front doors using an entry tool.[5]  A surveillance camera was seen mounted above the front entryway of the front door.[6]

After entry into the home, officers kicked in Appellant's closed bedroom door, the door hit Appellant and bounced back.  At that point, Appellant stuck his arm out from behind the door and pointed a firearm in their direction.[7]  The SWAT team member that acted as "point" that day testified he saw "an arm protrude from the doorway, and then the arm is holding a pistol with some kind of light or a laser device on it.  And then aiming it toward our general area . . . ."  Another SWAT team member testified he saw "what looked like a gigantic hole of a pistol pointed at my face."  He fired his assault rifle and struck Appellant twice through the door, causing injury.  These events occurred in less than two minutes.

Appellant was subsequently charged with aggravated assault of a public servant based on his conduct of pointing a firearm at the officers serving the search warrant.  The matter was tried to a jury, after which the jury convicted Appellant of the lesser-included offense of aggravated assault.  The court entered an affirmative deadly-weapon finding and sentenced Appellant as noted.

---

[4] One officer agreed the tool used to break the windows was a "pry bar."  The window was broken to "get eyes in" or "create a distraction."

[5] The officer who entered the home first testified the home had a metal security screen door locked with a deadbolt and an entry door beyond that. He described these as "fortification" measures.

[6] One SWAT team member testified that during the pre-entry briefing, he was informed that the residence had "live-feed surveillance."

[7] A SWAT team member testified "immediately a pistol came through the opening of the doorway, and it was about head level with me and [another officer]."  He later said the gun was pointed "[d]irectly at myself and [the other officer]."  The officer testified he was "scared" when Appellant pointed the pistol "directly at [his] face."

## ANALYSIS

### ISSUE ONE—SELF-DEFENSE INSTRUCTION

By his first issue, Appellant argues he was entitled to a jury instruction regarding self-defense because the evidence showed that to protect himself, he pointed his firearm at individuals who forcibly broke into his home. He maintained throughout trial, and continues to do so on appeal, that he did not know that the people entering his home were police officers.

We review alleged jury charge error in two steps. *Taplin v. State*, No. 03-19-00257-CR, 2020 Tex. App. LEXIS 8243, at *5 (Tex. App.—Austin Oct. 15, 2020, no pet.) (mem. op., not designated for publication). First, we determine whether error exists; and then, if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* (citing *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Taplin*, 2020 Tex. App. LEXIS 8243, at *5 (citing *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error)). If the complaint about jury charge error was preserved in the trial court, "then reversal is required if there was some harm to the defendant." *Taplin*, 2020 Tex. App. LEXIS 8243, at *5 (citing *Marshall*, 479 S.W.3d at 843).

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense. *Taplin*, 2020 Tex.

4

App. LEXIS 8243, at *5-6 (citing *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013)). The defendant bears the burden of production with respect to a defense and the issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense. *Taplin*, 2020 Tex. App. LEXIS 8243, at *6 (citations omitted). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Id. See Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) ("The defendant bears the burden of showing that each element of the defense has been satisfied."). In determining whether a defense is thus supported by the evidence, the court views the evidence in the light most favorable to the defendant's requested jury instruction and relies "on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Taplin*, 2020 Tex. App. LEXIS 8243, at *6 (citations omitted).

A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing TEX. PENAL CODE ANN. § 9.31(a)). A person is justified in using deadly force against another if he would be justified in using force, and he reasonably believes deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* (citing TEX. PENAL CODE ANN. § 9.32(a)). The evidence does not have to show that the victim was actually using or attempting to use unlawful deadly force because a person has the right to defend himself from apparent danger as he reasonably apprehends it. *Id.* (citing *Hamel v. State*, 916 S.W.2d 491, 493

5

(Tex. Crim. App. 1996)).  "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.  TEX. PENAL CODE ANN. § 1.07(a)(42).

Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct.  *Jordan*, 593 S.W.3d at 343 (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)).  He cannot both invoke self-defense and flatly deny the charged conduct.  *Id.* (citation omitted).  In other words, the defendant would have to admit to the use of deadly force against someone he reasonably believed was using or attempting to use unlawful deadly force against him.  In that regard, Appellant conceded throughout trial that he pointed a gun at the men who entered his home, while he also maintained he did not know the men were police officers, and he now argues those facts entitled him to a jury instruction regarding self-defense.

In support of his position, Appellant argues the uncontested evidence shows a dozen men knocked down two doors, broke out windows and kicked in and struck Appellant with his bedroom door.  Appellant contends he was unaware that these men were the police or that they were executing a search warrant.  Appellant "blindly stuck his arm through a one-foot opening and pointed a handgun toward one of these men."  That man then shot Appellant twice with an assault rifle.   Appellant also points to other evidence he says supports his position including the fact that members of the SWAT team testified they forcibly entered Appellant's home, intending to surprise him with "shock and awe."  They all shouted "police search warrant" but did so while wearing gas masks that muffled their voices.  The officers had trouble communicating with one another due to the commotion caused by the entry into Appellant's home.  The officers also testified that

6

someone in Appellant's position could feel threatened, invaded, stressed, and justified in defending himself with a firearm if he did not know the men entering the residence were police officers.

On appeal, Appellant argues that the jurors obviously believed Appellant did not know these men were law enforcement officers because they acquitted him of the greater offense of aggravated assault of a public servant and instead found him guilty of the lesser-included offense of simple aggravated assault. While we might speculate that this is the reason the jury acquitted Appellant of the greater offense of aggravated assault of a public servant, the jury's reasoning and conclusion are of no consequence to the resolution of this issue because we must review the trial court's decision on the basis of whether, at the time the trial court presented the charge to the jury, the evidence presented would have supported a rational inference that each element of self-defense were true.

The State disagrees with Appellant's contention that self-defense was raised, arguing there was no evidence to support Appellant's entitlement to a jury instruction.[8] In fact, the State points to evidence that shows Appellant did not act in self-defense. While Appellant's roommate testified the home had been recently burglarized, the State notes Appellant had a television in his bedroom that was connected to a live-feed surveillance video system on the outside of his home. The State further contends this, along with evidence of the clothing worn by the officers and the announcements they made on

---

[8] The record shows a mistake-of-fact instruction was provided in the jury charge.

entering Appellant's home, shows Appellant knew the people entering his home were police officers and not burglars.

Moreover, as to the charge of aggravated assault of a public servant, Appellant is not entitled to a self-defense instruction because he never admitted guilt as to the charged offense.  *See Mercer v. State*, No. 02-16-00439-CR, 2017 Tex. App. LEXIS 10088, at *11-12 (Tex. App.—Fort Worth Oct. 26, 2017, pet. ref'd) (mem. op., not designated for publication).  As in *Mercer*, Appellant only admitted to committing aggravated assault, but denied committing aggravated assault of a public servant because he maintained he did not know the people entering his home were police officers.  Because Appellant failed to admit to an essential element of the offense, i.e., committing aggravated assault when he knew "the person assaulted is a public servant while the public servant is lawfully discharging an official duty," Appellant "did not pass the threshold of admission that requires a court to provide a self-defense instruction to the offense of aggravated assault of a public servant."  *Mercer*, 2017 Tex. App. LEXIS 10088, at *11 (citations omitted).

In addition, the State further argues self-defense is only justified against a peace officer when it has been shown that the peace officer used excessive, unlawful force against the actor.  Because Appellant made no argument that the officers used greater force than necessary at trial or on appeal, he has not shown himself justly entitled to a self-defense instruction to the charged offense.

In pertinent part, section 9.31(c) limits the right to use of force against a peace officer as follows:

8

(c) [t]he use of force to resist arrest or search is justified:

    (1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

    (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

*Shadden v. State*, No. 07-10-0331-CR, 2012 Tex. App. LEXIS 4001, at *5 (Tex. App.—Amarillo May 18, 2012, no pet.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. § 9.31(c)).

Appellant never made an argument or presented any evidence indicating that the officers used or attempted to use greater force than necessary in executing the search warrant. While the evidence presented showed the circumstances were chaotic, there is no indication of any excessive force by the officers. Accordingly, Appellant was not entitled to an instruction concerning self-defense. *Shadden*, 2012 Tex. App. LEXIS 4001, at *7-8. *See also Mercer v. State*, 2017 Tex. App. LEXIS 10088, at *11-12. We overrule Appellant's first issue.

#### ISSUE TWO—SUFFICIENCY OF THE EVIDENCE AFTER ACQUITTAL ON GREATER OFFENSE

Via his second issue, Appellant argues that the jury acquitted him of the only permissible theory of criminal conduct (aggravated assault against a public servant) and, had the jury been properly instructed regarding self-defense, it would have acquitted him of aggravated assault as well. He further contends the evidence is insufficient to support his conviction for aggravated assault.

9

When determining whether there is sufficient evidence to support a criminal conviction, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt. *Tate*, 500 S.W.3d at 413. In a sufficiency inquiry, direct evidence and circumstantial evidence are equally probative. *Id.* (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013)).

The jury is the sole judge of credibility of the witnesses and weight to be attached to their testimony, and juries may draw multiple reasonable inferences from the facts, so long as each inference is supported by the evidence presented at trial. *Jackson*, 443 U.S. at 319. *See Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). The jury is not, however, allowed to draw conclusions based on mere speculation. *Hooper*, 214 S.W.3d at 16. Unlike a reasonable inference, speculation is insufficiently based on the evidence to support a finding beyond a reasonable doubt. *Id.* When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326.

As charged in the indictment herein, a person commits aggravated assault on a public servant by intentionally or knowingly threatening a public servant with imminent bodily injury while using or exhibiting a deadly weapon during the commission of that

10

offense.  *See* TEX. PENAL CODE ANN. § 22.01(a)(2); § 22.02(a)(2), (b)(2)(B).  A person commits "simple" aggravated assault by intentionally or knowingly threatening another with imminent bodily injury while using or exhibiting a deadly weapon during the commission of the offense.  TEX. PENAL CODE ANN. § 22.01(a)(2); § 22.02(a)(2).  Here, Appellant admitted he pointed a firearm at one of the men who entered his home— conduct which standing alone could constitute aggravated assault.  What Appellant did not admit was his knowledge that the person at whom he pointed the weapon was a police officer.

Appellant contends that the facts of this case lead to only two rational conclusions: (1) Appellant knew the SWAT team entered his home and he pointed a gun at one of the officers despite this knowledge or (2) Appellant did not know the people who entered his home were law enforcement personnel and he pointed a gun at a person he thought was breaking into his home.  Appellant argues that because the jury acquitted him of aggravated assault on a public servant that negates the first rational conclusion.  He asserts that the remaining facts are insufficient to prove guilt based on the second rational conclusion because he would be protected by the law of self-defense.

We disagree.  A similar argument was made by the defendant in *Harrell v. State*, No. 03-18-00391-CR, 2020 Tex. App. LEXIS 4131, at *12-13 (Tex. App.—Austin May 28, 2020, no pet.) (mem. op., not designated for publication).  There, like here, the defendant did not argue that the evidence failed to prove any element of aggravated assault.  *Id.* Rather, he argued the evidence established that he was justified in committing the assault and maintained that the jury's acquittals of him of the greater offenses of attempted capital murder, attempted murder, and aggravated assault on a public servant showed that the

jury concluded the defendant did not realize that the people entering his home were police officers. *Id.* As such, he argued the evidence was insufficient to reject his justification defenses because the evidence demonstrated he was shooting at "armed intruders invading [his] home" and he was justified in protecting himself, his mother, and his property. *Id.* at *13.

The court noted that the defendant's argument was "contingent on eliminating from consideration all the evidence demonstrating that police officers lawfully executing a search warrant—rather than armed intruders—were entering his home because, in [the defendant's] view, it is inconsistent with the jury's verdicts rejecting aggravated assault of a public servant and convicting him only of aggravated assault." *Id.* But, the court stated, the "law does not bar inconsistent verdicts." *Id.* (citing *Hernandez v. State*, 556 S.W.3d 308, 321 (Tex. Crim. App. 2017) (quoting *Guthrie-Nail v. State*, 506 S.W.3d 1, 6 (Tex. Crim. App. 2015)); *see United States v. Powell*, 469 U.S. 57, 68-69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)). Thus, inconsistent verdicts, even when based on the same evidence, do not require reversal on the ground of legal insufficiency. *Harrell*, 2020 Tex. App. LEXIS 41431, at *13-14 (citations omitted). A jury's verdict should not be disturbed by appellate speculation or inquiry even when an inconsistent verdict might have been the result of compromise or mistake. *Id.* (citations omitted). We will therefore uphold a jury's verdict so long as the evidence supports the finding of guilt concerning aggravated assault and it supports the rejection of any justification defenses. *Id.* (citing *Hernandez,* 556 S.W.3d at 321).

Here, Appellant conceded, and the undisputed evidence showed, that he intentionally and knowingly threatened the officers with death or bodily injury by pointing

12

his gun at them from behind his bedroom door, thereby exhibiting that deadly weapon in their direction. Those facts alone provide sufficient evidence to support each element of the offense of aggravated assault. The fact that the jury acquitted Appellant of the greater offense of aggravated assault of a public servant does not negate that evidence. As the court concluded in *Harrell*, even if the jury believed Appellant was subjectively unaware that the individuals entering his home were the police, thereby negating the *mens rea* for aggravated assault on a public servant, the jury could have concluded that such a belief was not reasonable under the circumstances, *Harrell*, 2020 Tex. App. LEXIS 4131, at *17-18 (citing *Ruffin v. State*, 270 S.W.3d 586, 594-95 (Tex. Crim. App. 2008)), and found him guilty of aggravated assault as a result. The evidence here showed the execution of the warrant took place at noon, not during the night hours. The SWAT team members were dressed in clothing and vests with "POLICE" clearly printed on them. They announced their presence so loudly that a neighbor down the street heard the announcement. SWAT officers used a tool to break down the front doors and broke a window for a distraction, making noise that the jury could have concluded no burglar would have made. The evidence also showed Appellant's home had been recently burglarized and the jury had before it evidence indicating the SWAT team's entry was quite unlike a routine burglary, making it more likely that it was law enforcement entering the home rather than armed intruders. Lastly, SWAT officers testified to finding a television in Appellant's bedroom that appeared to show a live feed of events from cameras outside the home. The jury could have taken this as evidence showing Appellant knew it was the police who were entering his home. Because the jury acquitted Appellant of the greater offense and convicted him of the lesser offense, one might presume it did

so as a compromise.  As an appellate court, we are not to speculate on the reasons for a jury's verdict and will not disturb the decision when the evidence is sufficient to support its verdict.  *Harrell*, 2020 Tex. App. LEXIS 4131, at *13-14.  Accordingly, we find the evidence sufficient to support Appellant's conviction of aggravated assault and overrule his second issue.

### ISSUE THREE—SECOND AMENDMENT AND ARTICLE 1, SECTION 23 OF THE TEXAS CONSTITUTION

In his third issue, Appellant argues he was convicted of conduct protected by the Second Amendment and article 1, section 23 of the Texas Constitution.[9]  The State responds that Appellant failed to preserve this issue for appellate review.  We agree.

Before presenting a complaint for appellate review, it must be shown that the complaint was raised with the trial court by a timely request, objection, or motion that stated the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint, and that the trial court rule on the request, objection, or motion.  TEX. R. APP. P. 33.1(a).

The preservation requirements that apply to a constitutional challenge depend on the nature of the right allegedly infringed. The Texas Court of Criminal Appeals has divided these rights into three categories:

---

[9] The Second Amendment to the United State Constitution provides "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.  Article 1, section 23 provides that every citizen has the right to keep and bear arms in the lawful defense of himself or the State but that the legislature may regulate the wearing of arms, with a view to prevent crime.  TEX. CONST. art I, § 23.

14

(1) absolute, systemic requirements and prohibitions that cannot be waived;

(2) rights of litigants that must be implemented by the system unless expressly waived; and

(3) rights of litigants to be implemented upon request.

*Roman v. State*, 571 S.W.3d 317, 320 (Tex. App. 2018) (citing *Ex parte Heilman*, 456 S.W.3d 159, 162 (Tex. Crim. App. 2015) (quoting *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with [Texas] Rule [of Appellate Procedure] 33.1(a)." *Roman*, 571 S.W.3d at 320 (citing *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004)).

Appellant's complaint is one that is waivable in nature. The record before us does not show Appellant raised his complaint concerning the Second Amendment or article 1, section 23 of the Texas Constitution with the trial court. Accordingly, he has waived this issue for our review. As such, we resolve Appellant's third issue against him.

### ISSUE FOUR—EGREGIOUS HARM DUE TO INCLUSION OF LESSER-INCLUDED OFFENSE

Through his last issue, Appellant argues that under the facts of this case, aggravated assault was not a valid rational alternative to aggravated assault of a public servant. Thus, he contends, the trial court should not have included an instruction permitting the jury to consider the lesser-included offense of aggravated assault. We disagree.

The Court of Criminal Appeals has established a two-pronged test to determine the propriety of the inclusion of a lesser-included offense instruction in the charge to the jury. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). First, the lesser-included offense must be included within the proof necessary to establish the offense charged, and second, some evidence must exist in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 535-36; *Skinner*, 956 S.W.2d at 543 (citing *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993)). *See Moore v. State*, 969 S.W.2d 4 (Tex. Crim. App. 1998). However, when the State requests the lesser-included offense instruction (as occurred here) it is only required to satisfy the first prong of the test and is not bound by the second. *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009). *See West v. State*, No. 11-13-00298-CR, 2015 Tex. App. LEXIS 11224, at *5 (Tex. App.—Eastland Oct. 30, 2015, pet. ref'd) (mem. op., not designated with publication) (citing *Grey*, 298 S.W.3d at 645).

The first step of our analysis is one of law. *Hall*, 225 S.W.3d at 535. The Code of Criminal Procedure defines an offense as a lesser-included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09. *See Hall*, 225 S.W.3d at 536; *Irving v. State*, 176 S.W.3d 842, 845

16

(Tex. Crim. App. 2005). Whether an offense falls within this definition does not depend on the evidence to be produced at trial but rather is performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense. *Hall*, 225 S.W.3d at 535-36.

As set forth in our previous discussion, a person commits aggravated assault on a public servant by intentionally or knowingly threatening a public servant with imminent bodily injury while using or exhibiting a deadly weapon during the commission of the offense. *See* TEX. PENAL CODE ANN. § 22.01(a)(2); § 22.02(a)(2), (b)(2)(B). A person commits aggravated assault by intentionally or knowingly threatening another with imminent bodily injury while using or exhibiting a deadly weapon during the commission of the offense of assault. *Id.* at § 22.01(a)(2); § 22.02(a)(2). Aggravated assault requires proof of all of the same elements as aggravated assault on a public servant except the element that Appellant knew the victim was a public servant. Therefore, under the requisite analysis, aggravated assault is a lesser-included offense of aggravated assault of a public servant. Because the State is not bound by the second prong of the analysis, we do not reach it. As such, we find the trial court did not err in including an instruction permitting the jury to consider the lesser-included offense of aggravated assault in its charge to the jury. Finding no error, we do not reach the issue of harm. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We resolve Appellant's last issue against him.

**CONCLUSION**

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.